UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOROTHY HALL, and
WILLIAM HALL, her husband,

    Plaintiffs,

                              Case No.:       8:09-cv-02032-JSM-MAP

vs.

SUNJOY INDUSTRIES GROUP, INC.,
an Ohio corporation and
K MART CORPORATION,
a Michigan corporation,                      ***DISPOSITIVE MOTION***

    Defendants.
_____/

**DEFENDANTS' JOINT MOTION FOR INVOLUNTARY DISMISSAL
WITH PREJUDICE BASED ON HALLS' FRAUD ON THE COURT**

Defendants jointly respectfully move this Court pursuant to Fed. R. Civ. P. 41(b) and 26(g) and the Court's inherent authority to dismiss Plaintiffs Dorothy and William Halls' claims with prejudice, and state as follows:

**I.    INTRODUCTION**

In two pleadings filed in this case, plaintiffs' attorneys have moved to withdraw as counsel due to Mrs. Hall's dishonesty in her deposition testimony. Dockets 27, 29. In those pleadings, the attorneys stated that they could not ethically proceed, and had irreconcilable conflicts with plaintiffs, due to "the legal effect of differences between the deposition testimony of Plaintiff Dorothy Hall and conflicting facts found in her employment records." Docket 29 at 1.

Mrs. Hall's attorneys informed the court that factual differences between the records and Mrs. Hall's testimony created a conflict between their duty to her and their duties of candor to the Court

1

(presumably to inform the Court of false testimony and fraud). Docket 29 at 2. These motions are unusual, and are serious.

At the hearing on the motions November 10, 2010, the movant attorneys could not explain the gross tardiness of their motion, and Mrs. Hall objected for the same reason and had not arranged replacement counsel. The Magistrate Judge denied the motion to withdraw.

The "factual differences" that Hall's lawyers said created an ethical conflict are, quite simply, brazen falsehoods stated by Mrs. Hall in her deposition, and adopted later by her husband. This fraudulent testimony goes to the heart of the case's merits.

The Halls' conduct is audacious and fraudulent. It is an affront to this Court. Dismissal with prejudice for false swearing of this magnitude is a righteous sanction. Dismissal is permitted under this Court's inherent power and under Fed. R. Civ. P. 41(b). Dismissal is commanded in the interests of justice. The most salient frauds are listed below.

### A.     *Dorothy Hall's Falsehoods About No Prior Ailments, Back, or Bone/Joint Pain*

This is a non-surgical soft tissue case in which Mrs. Hall, who weighed approximately 345 - 360lbs. at the time, allegedly sat down on a small metal chair at K-Mart. Tr. 247, 254.[1] She testified that the chair collapsed and "I landed flat on my back". Tr. 163; 166 ("on my back"). A photograph of the chair from a packaging slip is attached[2].

---

[1] Mrs. Hall's deposition transcript is set forth in Attachment 1. Mrs. Hall stated it was "very possible" she weighed 350 - 360 lbs. at the time. Tr. 247. Dr. Tresser concluded her weight was 360 lbs. Attachment 12.

[2] Attachment 2. K-Mart did not retain the crushed chair.

At the time of the alleged fall, August 31, 2007, Mrs. Hall felt only "a tingle" or "twingeing" in her ankle (Tr. 166 - 167, 181), and left the store on her own. That day at home she felt a little pain in her ankle. Tr. 183.

Most important, Mrs. Hall swore adamantly at her deposition that she had no back pain or similar ailments whatsoever prior to this fall. Her only back pain prior to this fall was during her menstrual period:

> **Q: ...But you are telling me that you have never had back pain before August of 2007?**
> **A: (D. Hall): Not the way that it is. No.**
> **Q: Okay. What kind of back pain did you have before August of 2007?**
> **A: The back pains that I had before was when I am on my cycle. That's the back pain. That's not chronic.**
> **Q: What do you mean by "on your cycle?"**
> **A: When your monthly begins.**
> **Q: Your menstrual cycle?**
> **A: That's correct. You have the bloating; you have the pain.**
> **Q: So before August of 2007, you never had back pain other than when you were going through your monthly menstrual cycle?**
> **A: That's correct. (Tr. 39, see also Tr. 195, 198, same).**

Mrs. Hall firmly restated her testimony:

> **Q: What about low back pain?**
> **A: No.**
> **Q: So you never had low back pain of any type prior to the incident at Kmart involving the chair that we're here on today?**
> **A: That's correct.**
> **Q: Okay how about your hips, you ever had any pain in your left hip before the incident at Kmart where you fell out of the chair?**
> **A: No. Tr. 198.**

She also testified that she had no back or any other pain-related aliments prior to this fall at K-Mart. (Tr. 195, 207 "no arthritis"; Tr. 196 "no bone or joint pain"; Tr. 197 no pain in body parts, generally). Defense counsel ran down a litany of body parts (headaches, neck, knees, hips, ankles,

3

etc.) with Mrs. Hall. She had no pain or ailments with *any* of them until her fall at K-Mart. Tr. 195 - 198, 207. This was unequivocal.

This testimony of no back pain and no ailments generally prior to the alleged K-Mart chair collapse is key to her case. In other words, she was fine until she fell at K-Mart. All of her myriad, very severe, very debilitating pain and injuries she now suffers started with that calamity on August 31, 2007 in K-Mart. So she swore, quite plainly, in her deposition.

Now, however, *after* this incident ("right after the accident" Tr. 38) she experienced daily back pain. "The next day my body – my entire body was frozen." Tr. 183. The very next day, having never before been sore in the back as she said, she was diagnosed "back sprain" by the doctors. Tr. 184. Then, and only then, began the cascade of injury that has left her massively disabled, albeit without surgery.

This severe body-encompassing pain that first surfaced on the day after the K-Mart chair fall has developed into acute disability, primarily nerve ( neck and back) related: radiating pain everywhere, inability to drive (Tr. 83), blinding headaches, blurred vision (Tr. 194), bulging/herniated lower back and neck disks (Tr. 186), painful injections (Tr. 187), severe hand, neck, leg/knee disability, shooting pain, paralyzed or "frozen up" body (Tr. 112 -116, 204, 233, 238), etc. This onslaught of injury[3] which did not exist before, began at K-Mart on August 31, 2007 and is the source of all her loss.

Mrs. Hall's testimony was plain and clear, and entirely false. The truth belies Hall's fraudulent testimony. Well before the K-Mart incident, Hall suffered from arthritis, back arthritis,

---

[3]In interrogatory answers (Attachment 3) dated 2/8/10 Hall says her injuries "include herniated disks in my neck and lower back. Body areas impacted are neck, shoulder, arms, wrist, head, back coccyx, legs, ankles, feet, and toes."

4

hip arthritis, chronic back pain, lower back pain, swollen feet, pain radiating into thighs, degenerative knees, joint pain: most of the ailments she falsely testified only arose in K-Mart.

For example, despite her testimony to the contrary, medical records as early as 2001 show that Hall had swollen joints, joint pain, swollen ankles, headache, and low back pain[4].

Although Hall testified she had no arthritis and no hip or back pain prior to the K-Mart fall, Hall gave a medical history as early as 2001 where her chief complaint was listed as "arthritis pain" and the medical assessment was "low back pain." The Doctors' notes for two separate appointments that Fall said "low back pain" and "try Vioxx" and "try Mobic." Vioxx and Mobic are strong prescription arthritis-type pain relievers. In another appointment note for a third visit in 2001 the Doctor's note found the chief complaint to be lower back, joint, and knee pain. At that point Hall was diagnosed as having knee and low back pain. (Attachment 4).

Records show that in 2003 Hall gave a medical history stating that she had reduced joint motion, and numbness/tingling, ailments she testified only arose after her fall at K-Mart. Moreover, about two years before her K-Mart fall, Hall had a medical history of "mild arthritis in lower back and hip."[5]

Similar medical ailments that Hall reported prior to K-Mart, but lied about in her deposition include reporting pain in her upper right thigh in 2004[6] (suggesting possible nerve impairment).

---

[4]These records, in Attachment 4, came from one of Hall's treating physicians, Michael Burnette, M.D.

[5]See Attachment 5.

[6]See Attachment 6.

It is impossible that Hall could have forgotten about these matters because the same treating physician, Michael Burnette, has treated her from 2001 to present. Burnette's 2010 records show that Hall's chief ailment, chronic back pain, appeared first to him on 9/25/01. (Attachment 4).

Hall did not forget about these matters. She simply chose to lie.

  **B.**  *Dorothy Hall's Fraud Concerning No Prior Falls From a Chair*

As a 350 - 360 lb. woman, it is incumbent upon Mrs. Hall to show that she knows how to sit carefully and securely upon furniture, especially chairs. This is especially true since the chair at issue was not large. If she could not sit carefully on a small chair, or had a prior injury from a chair fall, that would hurt her case. Likewise, had she earlier claimed injury on the job, or filed for Workers Compensation, it could impair her case here.

Dorothy Hall continued her false swearing before this Court:

> **Q: Have you ever slipped and fallen?**
> **A (D. Hall): No.**
> **Q: Before this incident at Kmart, had you ever fallen off of any furniture before?**
> **A: No.**
> **Q: Have you ever fallen out of a chair?**
> **A: No.**
> **Q: Have you ever been injured on the job?**
> **A: No.**
> **Q: Have you ever filed a workers' comp claim?**
> **A: No. (Tr. 195).**

Later in the deposition; Mrs. Hall repeated her firm testimony:

> **Q: And you have fallen or crushed chairs before, have you not?**
> **A: No, I have not.**
> **Q: Never fell off a chair before?**
> **A. No I have not. (Tr. 253).**

6

Once again, Mrs. Hall flouted her oath and swore falsely before this Court. Some time after Hall's false deposition, through the State of Florida Division of Workers Compensation, the defendants discovered the following: Mrs. Hall, while employed at PSCU Financial Services, reached down to remove a computer disk, and she fell off the chair down to the floor[7]. This happened 16-months before Mrs. Hall claims she fell of a chair, for the first time ever, at K-Mart. Mrs. Hall lied about this important issue, baldly.

Worse yet, Mrs. Hall filed a Workers' Compensation claim, which means she lied in her deposition about never claiming injury on the job and lied about never filing for Workers' Compensation. To multiply her falsehood, Mrs. Hall claimed injury and was diagnosed with knee sprain when she fell from this chair in 2006. So, she also perjured herself about never having bone/joint pain or knee pain before K-Mart. (Tr. 196 - 199 perjury). Hall's formal diagnosis from this 2006 chair fall was "knee sprain." But continuing her perjury, Mrs. Hall testified:

> **Q: Before the Kmart incident in 2007, have you ever had any sprains or strains?**
> **A: No (Tr. 202).**

The State of Florida records shows Mrs. Hall was treated, x-rayed, and prescribed three prescription painkillers for this fall off the chair and "knee sprain" in 2006. One of these painkillers was Tramadol, which is prescribed for moderate to moderately severe pain (according to lay research online). The records suggest that additional painkiller refills were prescribed in 2006 as well.

Records from this incident found after Hall's deposition, from a former employer, show how boldly she lied. (Attachment 8). These records show that in May 2006, prior to falling from her first chair, Mrs. Hall *already* had a preexisting condition for her knee injury. Although lying about all

---

[7]See Attachment 7.

of this at her deposition, Hall's "length of treatment" in 2006 was 50 days. Beyond the pharmaceutical prescriptions, she received a prescription for physical therapy. Suppliers invoiced the file for providing Hall with other items medically prescribed: aluminum crutches and a thermal compression unit for her. (Attachment 8).

Despite her false statements to this Court, in 2006 her records from that chair fall showed "moderately advance osteoarthritis of all three joint compartments with significant loss of the medial joint compartment space." This was medically deemed to be "exacerbation, moderately advanced degenerative arthritis of the knee." Mrs. Hall told the Doctor at the time that she was unemployed, looking for sedentary work. He described her as a "morbidly obese female who has difficulty arising and getting onto the examination table." (Attachment 8). She said her pain was at a "3" level. She had a "slight antalgic" component to her posture. The Doctor noted "she does report some preexisting knee problems." Dorothy Hall could report preexisting conditions to the Doctor in her 50-day treatment in 2006. But all was forgotten once she decided to sue K-Mart and codefendant a year later. These records put the lie to much of Dorothy Hall's testimony.

Hall's lies helped her strategically in this matter. She avoided cross-examination about the incident and records by lying because the records were not uncovered until after her deposition.

Worse, yet, Mrs. Hall's claim for workers compensation from this chair fall was ultimately denied by the carrier, totally. The reason for the complete denial was "substance policy violation." As the employer file says, " Section 440.102 employee tested positive.[8]" Mrs. Hall did not receive monetary compensation, and likely did not get full therapeutic care, for this chair fall and injury

---

[8]Section 440.102, Florida Statutes, sets the parameters for violation of the Florida Drug-Free Workplace statutes. These records from the 2006 chair fall are in Attachments 7 and 8.

because of her recreational drug abuse. She impaired her recovery by drug abuse in 2006, and then lied about it. That matter is discussed in section C, below.

### C.  *Dorothy Hall's Perjury Concerning Drug Abuse*

Whether Mrs. Hall abused recreational drugs was relevant for two reasons: First, she may have been under the influence when she was at K-Mart placing herself on the chair. Second, the illegal use of recreational drugs could impact her medical history, impair her treatment, healing, and prognosis, and could increase her injury and claimed damages. This is especially true since her damages are non-surgical and "pain-management" related.

During her testimony, Mrs. Hall continued her ongoing fraud:

> **Q: What about recreational drugs, have you ever taken those?**
> **A: No.**
> **Q: So you never smoke marijuana?**
> **A: I tested it, yes.**
> **Q: When did you test it?**
> **A: Early 80's**
> **Q: Have you smoked marijuana since the early '80's?**
> **A: No.**
> **Q: Have you ever taken any other recreational drugs in your life, such as, but not limited to, cocaine, heroine, methamphetamines, anything you can think of?**
> **A: No.  (Tr. 147)**

The State of Florida and employer records from Hall's 2006 chair fall show that she was denied compensation and possibly treatment for her injury because of substance abuse. (Section B, above). Thus her illegal drug usage impaired her recovery and medical prognosis in that prior incident, likely aggravating a pre-existing condition and injury. Of course, we could not develop this fairly or at all, because Mrs. Hall lied about it and hid it fraudulently in her deposition. Her catholic

9

perjury destroys any chance of the jury understanding the true picture and state of Dorothy Hall's health and the reasons for its state.

Moreover, Dorothy Hall's illegal drug usage also impacted her therapy and treatment in another part of her life. Her false statements are bad enough, but her drug abuse impaired her treatment and may have aggravated her symptoms. One of her 16 + medical providers and chiropractors were Tampa Pain Relief Centers, Inc. While there, Hall gave a urine drug sample that was positive for THC. Of course she lied about this usage both in her deposition to us and to her treating doctors at the Pain Relief Center. Worse, however, is that upon her return visit in September 2009, she *refused to give* a urine screen requested of her by her physicians.[9]

Besides showing a sabotage of her own care and continued drug abuse, this refusal led Dr. Rivera, her treater, to refuse prescribing any opiods or addictive substances for her. In other words, the full panoply of therapy that Dr. Rivera might use to address this woman's pain was limited, because of her own illegal acts. Had she not lied at her deposition about these matters, this important defense and impeachment could have been developed.

### D.  *Mrs. Hall's Lies Sabotaged and Polluted the Expert Testimony In this Case*

Shortly after the accident Mrs. Hall consulted with a lawyer, and reported to the Physician's Group, LLC. Tr. 257 - 258. At her very first appointment there, two weeks after the incident, she lied to the Physicians Group, denying in its entirety her extensive pre-existing medical history. (Attachment 10).

That Mrs. Hall has readily lied to her treating physicians compounds the fraud. It impairs the conclusions of Halls' experts, and indeed the defendants' expert, who base their opinions in part

---

[9]These records, obtained from Tampa Pain Relief Centers, Inc., are in Attachment 9.

on past records and the patient relating a true medical history. These opinions have been rendered suspect in this case. Mrs. Hall's serial perjury and false statements have cast these opinions into doubt, with little remedy to the victimized defendants.

For example, the false medical narrative concocted for this litigation entered into the report of Dr. Gomes, one of Plaintiffs' experts. (Attachment 10). Likewise, the Halls have designated Daniel Murphy, M.D. as a trial expert. Mrs. Hall misled Dr. Murphy about the origin and start of her pain. She lied to Murphy about her prior state, including denying her history of arthritis. (Attachment 10). Likewise, the history Mrs. Hall gave to Dr. Eadie, another designated expert, is misleading. (Attachment 11).

When Mrs. Hall was examined by defendants' expert Steve Tresser, M.D., her earlier false statements about her medical history had permeated her other medical records in the case. Worse than this, Hall egregiously lied to Dr. Tresser, denying "any prior problems" with these body areas. She brazenly denied all pertinent medical history.

Hall amplified her fraud by denying any issue about 2006 chair fall (50-day treatment with drugs, physical therapy, and crutches for knee sprain and acute pain). She even denied that treatment involved medical symptoms at all, claiming the visit was only a precautionary prophylaxis, and falsely denied undergoing medical follow-up. (Tresser, Attachment 12).

At the end of her deposition, Mrs. Hall's counsel almost comically attempted to rehabilitate her, and get her to soften or ameliorate her brazen perjury. Tr. 226 - 270. It is remarkable how

unsuccessful he was: Hall stuck to her firm and fraudulent tale. Likewise, Hall's lawyers attempted to avoid the baldest and boldest of these lies in the interrogatory answers[10].

There must be some price to pay for such boldness in perjury. Even Hall's own lawyers are publicly disturbed by it.

Presumably the goal of this proceeding is to find the truth. Mrs. Hall, aided by her co-plaintiff, has flouted that in the most shameless way. Dismissal is the only appropriate sanction.

## II. WILLIAM HALL'S CONSORTIUM CLAIM IS ALSO SUBJECT TO DISMISSAL

William Hall's consortium claim should also be dismissed. First, it is based only upon alleged injury to his wife. Consortium is a derivative right: "A [husband's] right of action for loss of consortium is a derivative right and he may recover only if his [wife] has a cause of action against the defendant." *Testa v. Southern Escrow and Title, Inc.,* 36 So.3d 713, 715 (Fla. 1st DCA 2010), citing *Gates v. Foley,* 247 So.2d 40, 45 (Fla. 1971)[11]. Dorothy Hall has no more right of action against these defendants than does a thief for conversion of stolen goods. The Halls' alleged injuries, as presented here, travel on fraud. The fraud goes both to historical fact and to the causation asserted jointly by plaintiffs. Mr. Halls' claim therefore travels on fraud.

---

[10]For example, although Mrs. Hall lied about any prior back arthritis and also about her prior chair fall at her deposition, her lawyers did disclose it in her interrogatory answers dated 2/8/10. However, her false statements denying any pre-existing physical infirmity was repeated in those same interrogatory answers: **Interrogatory 20:** Were you suffering from any physical infirmity, disability, or sickness at the time of the accident....? **A:** "I was suffering from high blood pressure ...." The interrogatories are attached hereto in Attachment 3.

[11]See also, *Byers v. The Radiant Group, LLC.,* 966 So.2d 506, 508 n. 4 (Fla. 2d DCA 2007); *Commercial Clean-Up Enterprises, Inc. v. Holmquist*, 597 So.2d 343 (Fla. 2d DCA 1992).

William Hall attended his wife's earlier deposition and then testified consistently with her story. He melded his story to dovetail with her perjury. He described the many physical ailments that came solely as a result of the accident at K-Mart. W.H. Tr. at 58 (Attachment 13). He followed her theory that after the K-Mart incident, she had severe and new ailments and many disabilities. W.H. Tr. at 63 (e.g. Mr. Hall must help his wife bathe and go to toilet since incident). He abetted her fraud with embellishment: For example, she has never even tried to push a shopping cart since the incident. *Id.* at 68.

William Hall also falsely denied his wife had filed a workers compensation claim, and falsely denied that she had used marijuana or recreational drugs. *Id.* at 86 - 87. He falsely swore that prior to K-Mart, his wife had never had back pain, arthritis, or difficulty walking nor had ever fallen out of a chair or been to a doctor for back pain. *Id.* Prior to the alleged fall, Mrs. Hall had no chronic health problems except hypertension, he said. *Id.* at 97. His wife lied all the time and he never contradicted her once.

### III. LEGAL MEMORANDUM - DISMISSAL WITH PREJUDICE IS APPROPRIATE

#### A. *Standard for Dismissal for Fraud on the Court*

**This Court Has the Inherent Power to Dismiss Plaintiff's Claims**

This Court has the inherent power to impose a sanction of dismissal with prejudice for Plaintiffs' perpetration of fraud. Federal district courts are vested with the inherent power to "deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989); *see also Hornbuckle v. Woods*, 2007 U.S. Dist. LEXIS 17446 (N.D. Fla. 2007). This power includes the ability to do anything reasonably

necessary to prevent abusive litigation practices, including those instances when a party "dares to practice unmitigated fraud upon the court itself." *Aoude*, 892 F.2d at 1119.

The inherent authority of the court includes the power to impose appropriate sanctions against a party, such as dismissal. *Martin v. Lamborghini*, 307 F.3d 1332, 1335 (11th Cir. 2002). This power is deeply rooted in our common law tradition. *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). *See also McDowell v. Seaboard Farms of Athens, Inc.*, 1996 U.S. Dist. LEXIS 19558, *1, at *4 ("The United States Supreme Court has recognized a court's inherent power to impose the sanction of dismissal in response to abusive litigation practices"); *Pope v. Federal Exp. Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990)(finding that when a plaintiff engages in abusive litigation practices, such as perpetrating a fraud on the court, the court has the inherent power to impose a sanction of dismissal with prejudice). A party perpetrates a fraud on the court when there is clear and convincing evidence that it has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude*, 892 F.2d at 1118.

### This Court May Also Dismiss Plaintiff's Claims Pursuant to Federal Rules of Civil Procedure 41(b) and 26(g)

The Federal Rules of Civil Procedure grant this Court power to dismiss a fraudulent case. Specifically, Rule 41(b) states:

> For failure to the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in the order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication upon the merits.

Fed. R. Civ. P. 41(b). "Dishonest conduct by a party has been recognized as grounds for dismissal with prejudice under Rule 41(b)." *Pope*, 138 F.R.D at 682. This is an appropriate sanction when the plaintiff engages in egregious conduct that threatens the integrity of the judicial system. *Id.; see also McDowell*, 1996 U.S. Dist. LEXIS 19558, at *5 (noting that a district court may dismiss a case with prejudice for perpetration of fraud on the court pursuant to Rule 41(b)).

    Additionally, Rule 26(g) states in pertinent part:

> Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated . . . The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, the request, response, or objection is:
> (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
> (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
> C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.
> (3) ***If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction***, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed. R. Civ. P. 26(g) (2010) (emphasis added). This rule provides federal courts with the explicit power to impose appropriate sanctions. *Pope*, 138 F.R.D. at 682. Moreover, the 1983 Advisory

15

Committee Notes state that the purpose of this rule is "to curb discovery abuse by explicitly encouraging the imposition of sanctions." *Id.*

In *In re AMTRAK "Sunset Ltd." Train Crash*, 136 F. Supp. 2d 1251 (S.D. Ala. 2001), *aff'd*, 29 Fed. Appx. 575 (11th Cir. 2001), the Plaintiff brought suit against *AMTRAK,* and other defendants relating to injuries he allegedly sustained due to a crash of the subject passenger train. In his interrogatory responses, Plaintiff provided several deceptive and misleading answers about the nature of his physical health prior to the accident. Subsequent discovery and investigation by the defendants brought these false and deceptive answers to light. In granting defendants' motion to dismiss for fraud on the court, the court held, "the fact that [Plaintiff] was not truthful in his answers to interrogatories raises serious questions as to the truthfulness of his testimony relating to this incident." *AMTRAK,* 136 F. Supp. 2d at 1271. The court further noted that in light of Plaintiff's untruthfulness, no "jury can decipher whether plaintiff's claims are in fact caused by this incident or whether they are trumped up as a result of his hope for financial gain." *Id.*

### B.     *Case Precedent Suggests Dismissal is the Appropriate Sanction*

Any trier of fact, as well as any expert rendering an opinion medically, will be greatly dependent on the subjective statements of Dorothy Hall in relation to her perceived injuries. This puts defendants in an untenable position, trying to defend against a plaintiff who, abetted by her husband, has proven herself to be boldly untruthful in the past. Defendants could by no means be promised a fair trial in such a case if the Halls are permitted to continue in these claims. The only proper sanction is dismissal of Halls' claims.

*In re AMTRAK "Sunset Ltd." Train Crash*, 136 F. Supp. 2d 1251, (discussed above) is instructive in the present case. There, the court focused on Plaintiff's significant failures to provide

16

accurate discovery responses on material issues to the case (largely related to the physical health of the Plaintiff) in granting the defendants' motion for fraud on the court. Plaintiff's untruthful answers raised "serious questions as to the truthfulness of his testimony relating to this accident" so that no "jury can decipher whether plaintiff's claims are in fact caused by this incident or whether they are trumped up as a result of his hope for financial gain." *AMTRAK,* 136 F. Supp. 2d at 1271. Dorothy Hall has placed herself in the same situation here, aided by her husband/co-claimant. She has grossly and blatantly lied about material issues to this case, namely the nature and causation of her injury and damages. Besides violating her oath, she has injected wild falsehoods into medical records and materials upon which experts on both sides render opinions.

An analogous State case is *Ramey v. Haverty Furniture Companies, Inc.,* 993 So.2d 1014 (Fla. 2d DCA 2008). There the plaintiff asserted a negligently constructed entertainment center collapsed on his head, causing him neck problems, headaches, and TMJ injury. Plaintiff denied any prior injuries to his neck. Discovery revealed that plaintiff had in fact injured his neck and had been treated for both neck injury and headaches before the subject, just like Dorothy Hall. Plaintiff's case was dismissed for fraud on the court, and the dismissal was then upheld by the Second District Court of Appeals. Citing *Morgan v. Campbell*, 816 So.2d 251 (Fla. 2d DCA 2002), the Court noted plaintiff's false statements were "directly related to the central issue in the case." *Ramey*, 993 So.2d at 1020. As noted by the Court in *Ramey*, "such misrepresentations by their very nature 'unfairly hamper the presentation of the opposing party's defense,'" *Id.* (citations omitted).

Similarly, in *McKnight v. Evancheck*, 907 So.2d 699 (Fla. 4th DCA 2005) the plaintiff filed an automobile negligence claim alleging neck and low back pains. In his answers to interrogatories, he denied any prior medical problems or hospitalizations. However, the plaintiff's medical records

revealed extensive prior medical treatment for back pain and headaches. In upholding the lower court's dismissal with prejudice, the court found, "appellant's misrepresentations, if they had been successful, would have interfered with the jury's ability to adjudicate the issues." *Id.* at 701. The same is true here. Had the Halls successfully carried through with the deception, both Halls would have been significantly compensated (possibly greatly compensated) for many prior pre-existing conditions. Worse, the defendants would have been punished wrongly. There is now no way to sort out this mess that is entirely of the Halls' creation.

### IV.   CONCLUSION

Halls' actions and deceptions clearly establish an unconscionable scheme calculated to interfere with truth. They have violated in a premeditated way the ability of the judicial system to impartially adjudicate this matter. The judicial process includes defendants' right to full, complete and truthful discovery. *AMTRAK*, 136 F.Supp. 2d at 1267. There is little doubt Hall's failure to answer truthfully about so many facts material to her injuries defeats defendants' ability to establish and present its defenses in this case. Neither defendants, this Court, nor even the Halls' own lawyers (and certainly not the jury) is able to trust or believe the Halls in the litigation of this case. Likewise, Mrs. Hall's false history and statements has perverted medical expert opinions that are necessarily based on an honest medical history. It is for this reason that courts have in the past dismissed plaintiffs' claims for fraud on the court.

The Halls' fraud killed this case. It should go no further.

WHEREFORE, Defendants jointly move this Court to enter an Order dismissing Plaintiffs' action with prejudice for fraud on the court and for such other relief as the Court deems appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing has been furnished by CM/ECF this 29<u>th</u> day of November, 2010, to all counsel on record.


   s/ William F. Jung                                s/ Michael L. Forte
**William F. Jung, Esq.**                       **Michael L. Forte, Esq.**
FBN: 380040                                     FBN: 0592161
*Jung & Sisco, P.A.*                            *Rumberger, Kirk & Caldwell*
101 E. Kennedy Blvd., Suite 3920                One North Tampa Street, Suite 2000
Tampa, FL 33602                                 Tampa, FL 33062
P:      (813) 225-1988                          P:      (813) 223-4253
F:      (813) 225-1392                          F:      (813) 221-4752
wjung@jungandsisco.com                          mforte@rumberger.com
Attorney For Sunjoy Industries Group, Inc.

and

**H. Jacey Kaps, Esq.**
FBN: 0056677
*Rumberger, Kirk & Caldwell*
80 S.W. 8th Street, Suite 3000
Miami, FL 33130
P:      (305) 358-5577
F:      (305) 371-7580
jkaps@rumberger.com

Attorneys for Kmart Corporation